### Chicago, Rock Island & Texas Railway Company v. N. J. Porterfield.

Delivered June 25, 1898.

**Action for Death—Measure of Damages.**

A requested instruction which limits the recovery of each of the plaintiffs in an action for the negligent killing of a person to the amount he or she would have received "in money" from the deceased, if he had lived, is unduly restricted, where the deceased was the son of one of the plaintiffs, the husband of another, and the father of the other, and supported them all.

Appeal from Wise. Tried below before Hon. J. M. Patterson.

*T. J. McMurray,* for appellant.

*R. E. Carswell,* for appellee.

Stephens, Associate Justice.—November 12, 1896, at a public crossing of appellant's railroad, near Chico, in Wise County, W. W. Porterfield, the husband of N. J. Porterfield and the father of the other appellees, except N. Porterfield, who was his aged father living with and dependent upon him, was, while in the act of crossing the railway track in a two-horse wagon, instantly killed by appellant's north-bound passenger train of that day. He also lost his wagon and team in the collision.

This suit was brought by the widow in her own right and as next friend for the five minor children, and by the father, who was 82 years old, to recover the consequent damages. The total amount recovered was $4800, apportioned as follows: To N. Porterfield, the father, $272.44; to N. J. Porterfield, the widow, $1294.09 (plus the wagon and horses, $100.11); to John Porterfield, the oldest minor son, $204.33; and to the others the remainder in sums inversely proportioned to their ages.

The grounds of recovery alleged and submitted in the charge to the jury were (1) the failure of the train operatives to blow the whistle and ring the bell as required by law in such cases, and (2) the negligent running of the train at a high and dangerous rate of speed. Upon the first issue there was the usual conflict of evidence, with the preponderance, probably, in favor of appellant, but with ample to sustain the verdict. Upon the second there was less conflict, but the testimony of the train-

men themselves left room for the inference that the rate òf speed was such at that particular place as a person of ordinary prudence would have avoided. The engineer, for instance, after stating that the schedule time was twenty-eight "or probably thirty miles an hour," testified that the train was about ten minutes late, and that they were going about thirty or thirty-five miles an hour when they passed the graveyard crossing, just before reaching the crossing where the accident occurred, and about thirty miles an hour when they went by the whistling post where they whistled for Chico station, and that with the most prompt and vigorous action after the danger signal was given, he was unable to stop the train short of 900 feet.

The issue of contributory negligence was also raised and submitted, but we are of opinion that the evidence warranted, the jury in finding that the deceased acted as a person of ordinary prudence would have done under like circumstances.

We are further of opinion that all these issues were fairly and fully submitted in the charge. We also approve the apportionment of the damages. The charge of the court might have been fuller upon this branch of the case, but most of the charges requested were properly refused, because, as applied to the facts of this case, they were too restrictive, and if given, would have been misleading. One of these charges, for instance, reads: "You are charged that if you should find for the plaintiffs, then you can only find for each one such sum as you may find from the evidence each one would have received in money from said W. W. Porterfield, had he lived, taking into consideration the ability and industry of said W. W. Porterfield, and his willingness to contribute to them."

The deceased was an industrious farmer, supporting, advising, and taking care of his family, including his decrepit and dependent father, and what each of these received from him "in money" was the very least of the benefits received, for he gave them very little money. It is clear from the appropriate amounts allowed N. Porterfield and John Porterfield that the jury needed no special charge with reference to them.

We approve the rulings on the demurrers and on the admission and exclusion of evidence.

Finding no merit in any of the numerous assignments of error, we affirm the judgment.

*Affirmed.*

Tarlton, Chief Justice, did not sit in this case.